UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GERARD OWCZARZAK,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 23-cv-13113<br>Honorable Judith E. Levy<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS
(ECF NO. 10)**

### I. Introduction

Plaintiff Gerard Owczarzak sues Defendant JP Morgan Chase Bank, N.A., for allegedly failing to prevent him from being defrauded into making multiple wire transfers to bank accounts in Hong Kong. ECF No. 1. JP Morgan moves to dismiss the case. ECF No. 10. The Honorable Judith E. Levy referred the motion to the undersigned for report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 11. The Court **RECOMMENDS** that JP Morgan's motion be **GRANTED**.

## II. Background

Owczarzak had a deposit account at JP Morgan and did his banking at several branches in Macomb County. ECF No. 1, PageID.2. In September and October 2022, Owczarzak was defrauded into making ten wire transfers, totaling $725,205, to bank accounts in Hong Kong. *Id.*, PageID.2-5. When he tried to make an eleventh wire transfer, a JP Morgan employee intervened to prevent the transfer. *Id.*

Owczarzak brings a negligence claim, asserting that JP Morgan failed to exercise reasonable care in preventing and investigating suspected fraudulent transfers, given that he was 70 years old and had cognitive limitations from a stroke. *Id.* He also claims that JP Morgan failed to employ recommendations from the Consumer Financial Protection Bureau (CFPB) to help recognize signs of elder financial exploitation. *Id.*, PageID.5-6. JP Morgan seeks dismissal of the case.

## III. Analysis

### A.

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations.  *Iqbal*, 556 U.S. at 678.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007).

**B.**

JP Morgan argues that Owczarzak's common-law negligence claim is displaced by Article 4A of Michigan's Uniform Commercial Code (UCC).  ECF No. 10, PageID.34-39.  The Court agrees.

3

Article 4A governs "funds transfers," commonly known as wholesale wire transfers. Mich. Comp. Laws § 440.4602 cmt. "A funds transfer is made by means of one or more 'payment orders,'" defined as "an instruction of a sender to a receiving bank to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." *Id.* §§ 440.4602 cmt., 440.4603(1)(a) (cleaned up). A "sender" is "the person giving the instruction to the receiving bank," and the "receiving bank" is "the bank to which the sender's instruction is addressed." *Id.*, § 440.4603(1)(d), (e). The "beneficiary" is the person to be paid. *Id.* § 440.4603(1)(b). Here, Owczarzak was the sender, JP Morgan was the receiving bank, and the Hong Kong account owners were the beneficiaries.

Article 4A displaces principles of common law that conflict with its terms:

> The rules represent a careful and delicate balancing of [banks' and consumers'] interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

*Id.*, § 440.4602 cmt. (cleaned up). Yet the UCC also states, "Unless displaced by the particular provisions of this act, the principles of law and equity shall supplement its provisions." *Id.*, § 440.1103(2) (cleaned up).

4

Michigan's state courts have not addressed Article 4A displacement. But when addressing a Tennessee provision that mirrors Michigan's Article 4A, the Sixth Circuit held that the article "displaces common-law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A." *Wright v. Citizen's Bank of E. Tenn.*, 640 F. App'x 401, 406 (6th Cir. 2016).  The critical inquiry is whether Article 4A's "'provisions protect against the type of underlying injury or misconduct alleged in a claim.'" *Id.* (quoting *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 87, 89-90 (2d Cir. 2010)).

In *Wright*, the plaintiff entered a payment order to be completed on October 9, but the defendant receiving bank inaccurately entered the beneficiary's account number, causing the transfer to fail.  *Id.* at 402-03.  The receiving bank corrected the wiring instruction and completed the transfer the next day.  *Id.*  The plaintiff brought a negligence claim, alleging that the receiving bank failed to exercise reasonable care in completing the authorized October 9 wire transfer and fraudulently issuing the transfer on October 10.  *Id.*  Finding that Article 4A addressed a receiving bank's failure to comply with a sender's order, the court found that the claim was displaced.  *Id.* at 407-08.

5

Following *Wright*, courts in this district have held that Michigan's Article 4A displaces negligence claims. In *Blostein v. J.P. Morgan Chase Bank, N.A.*, which addressed allegations like those here, the court said that "any common law claims based upon wire transfers have been found to be displaced by [Michigan's] Article 4A." No. 22-12856, 2023 WL 3319917, at *1 (E.D. Mich. May 9, 2023). The account holder in *Blostein* authorized the defendant bank to make several wire transfers totaling over $300,000 to an account in Thailand. The guardian of the account holder sued the bank for negligence, alleging that the account holder was a "vulnerable adult" and that the bank executed three transfers for the account holder even after the bank's branch manager reported a transfer to adult protective services. *Id.* Because Michigan's Article 4A "sets forth the rights and liabilities for payment orders, or wire transfers," and because the claim stemmed from wire transfers, the court held that the negligence claim was displaced. *Id.* at *3 (cleaned up).

In *McLaughlin v. Comerica Bank*, the elderly plaintiff fell victim to a scam and made a single wire transfer of $92,600 from her Comerica bank account. No. 21-12661, 2022 WL 16040109, at *1, 3 (E.D. Mich. Apr. 18, 2022). Fifteen minutes after authorizing the transfer, McLaughlin told Comerica to cancel the transfer, and Comerica staff allegedly told her that

6

the transfer would be stopped. *Id.* at *4. But Comerica did not cancel the transaction, which was completed four days later. *Id.* McLaughlin asserted that Comerica negligently completed the transfer without questioning her mental acuity and failed to cancel the transfer. *Id.* The court found that because "all of Plaintiffs' common-law claims are based upon the wire transfer," they were displaced by Article 4A. *Id.* at *6.

Owczarzak's claim stems from JP Morgan's alleged negligence in (1) completing the payment orders by wire transfer without questioning whether Owczarzak was being exploited and (2) failing to follow the CFPB recommendations on elder financial exploitation. ECF No. 1, PageID.5-6. But Article 4A governs both matters. First, Article 4A states that "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." Mich. Comp. Laws § 440.4702(1). The article sets forth a receiving bank's duties when executing an authorized payment order. *Id.* § 440.4802. Second, a receiving bank's duty to maintain commercially reasonable security procedures is covered under the article. *Id.* § 440.4702(2); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 978 (W.D. Tenn. 2020). Thus, Owczarzak's negligence claim is displaced.

Owczarzak argues that "[t]he type of misconduct alleged in this case is not specifically addressed in Article 4A," citing two cases in support. ECF No. 14, PageID.167.  In *Imperium Logistics, LLC v. Truist Fin. Corp.*, the plaintiffs were to receive $150,000 in settlement proceeds through a wire transfer to their attorney's client-trust account.  686 F. Supp. 3d 600, 602 (E.D. Mich. 2023).  But a fraudster hacked into the attorney's email and sent a message to the party transferring the funds that changed the wiring instructions to designate an account at Truist.  *Id.*  A second fraudster who worked at Truist accepted the wire transfer despite inconsistencies in the wiring instructions.  *Id.* at 602-03.

The plaintiffs sued Truist for common-law conversion.  Because a Truist employee knew that the transfer was fraudulent, the court found that "acceptance" of the transfer, as defined in the UCC, never occurred.  *Id.* at 606.  And since the UCC did not apply, the conversion claim did not conflict with the UCC.  *Id.* at 606-07.  The *Imperium Logistics* court also noted that, in *Wright*, "the Sixth Circuit contrasted the case before it with cases that 'involved allegations that the bank applied funds that it knew were illegally obtained, or tortiously enriched itself.'"  *Id.* at 606 (quoting *Wright*, 640 F. App'x at 406).

8

This case is distinguishable from *Imperium Logistics*, as the court's conclusion there hinged on the plaintiffs' allegation "that Truist actually recognized that the transfer was fraudulent before it accepted it—not that Truist *should have* recognized the transfer was fraudulent because of the inconsistencies." *Id.* at 607. There is no allegation here that JP Morgan knew that the transfer was fraudulent or participated in the fraud.

Owczarzak next cites *Bloom v. PNC Bank, N.A.*, in which the elderly plaintiff was fraudulently induced to transfer $661,000 from her PNC account to an account in New York—funds that were later transferred to the Cayman Islands. 659 F. Supp. 3d 27, 29 (D.D.C. 2023). The court held that Article 4A did not displace the plaintiff's breach of contract claim, as it "applies only to instances where a funds transfer is not authorized, or if there is an error in the actual mechanics of executing a funds transfer." *Id.* at 31. The court noted that the plaintiff did not allege that the transfers were unauthorized or that PNC made any error; instead, she asserted that "PNC repeatedly failed to respond appropriately to clear indications that Bloom was being defrauded." *Id.* It found that such a claim did not "fit

squarely" within the terms of Article 4A and held that the claim was not precluded. *Id.*[1]

The Court declines to follow *Bloom*, as this out-of-circuit case conflicts with precedent from multiple courts within the Sixth Circuit. *See Blostein*, 2023 WL 3319917, at *3; *McLaughlin*, 2022 WL 16040109, at *6; *Berry*, 507 F. Supp. 3d at 978. Under the precedent in this circuit, JP Morgan's "duty to maintain and abide by commercially reasonable security procedures in relation to funds transfers is set forth in Article 4A." *Berry*, 507 F. Supp. 3d at 978. And as noted in *Blostein,* "any common law claims based upon wire transfers have been found to be displaced by [Michigan's] Article 4A." No. 22-12856, 2023 WL 3319917, at *1 (E.D. Mich. May 9, 2023). The conclusion that Owczarzak's claims are displaced is supported by opinions from other circuits. *See Patco Constr. Co., Inc. v. People's United Bank*, 684 F.3d 197, 216 (1st Cir. 2012) (dismissing negligence claim as "inconsistent with the duties and liability limits set forth in Article 4A"); *Carter v. Wells Fargo Bank, Nat'l Assoc.*, 677 F. Supp. 3d 379, 383 (W.D. Va. 2023) (same).

---

[1] The court dismissed the plaintiff's negligence claim, finding that she did not allege breach of a duty independent of PNC's contractual obligations. *Bloom*, 659 F. Supp. 3d at 32-33.

So while the fraud committed on Owczarzak was outrageous, the Court finds that his claims against JP Morgan are displaced by Article 4A.

## IV. Conclusion

Thus, the Court **RECOMMENDS** that JP Morgan's motion to dismiss be **GRANTED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 15, 2024

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

11

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2024.

s/Donald Peruski
DONALD PERUSKI
Case Manager
